UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:14-cr-00132-JAW |
| | ) | |
| TIMOTHY S. KLIMAS | ) | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

NOW COMES the United States of America, by and through its attorneys, Thomas E. Delahanty II, United States Attorney for the District of Maine, and F. Todd Lowell and Andrew McCormack, Assistant United States Attorneys, and submits this memorandum to assist the Court in its determination of an appropriate sentence. The defendant faces a guideline sentencing range of life, a mandatory minimum period of imprisonment of 15 years, and a statutory maximum period of incarceration of 110 years. The United States Attorney's Office has conferred with the victims and understands they will not be making any request for restitution.

I.     **Relevant Background**

On November 12, 2014, a federal grand jury returned a four-count Indictment charging the defendant with the sexual exploitation of three children and with having transported and shipped child pornography. *Indictment* (ECF No. 16). On September 22, 2015, the defendant pleaded guilty to the Indictment. The Court ordered the preparation of a presentence report; the revised report has been completed ("PSR").

With the exception of the appropriate sentence, there are no contested issues remaining for sentencing. The defendant has submitted a sentencing memorandum that argues that the appropriate sentence is thirty years. *Def.'s Memorandum in Aid of Sentencing* (ECF No. 65).

## II.     Sentencing Recommendation

The defendant is facing a minimum term of imprisonment of fifteen years and a maximum sentence of 110 years. PSR ¶¶ 73-74. The Court must impose a term of supervised release of at least five years and has the discretion to order a term of supervised release of life. PSR ¶ 76. A fine of up to $250,000 for each count may be imposed and a special assessment of $100 per count is mandatory. PSR ¶¶ 81-82.

After United States v. Booker, 543 U.S. 220 (2005), the First Circuit has encouraged sentencing courts to follow a "specifically delineated roadmap" when sentencing under the advisory sentencing guidelines:

> [A] sentencing court ordinarily should begin by calculating the applicable guideline sentencing range; then determine whether or not any departures are in order; then mull the factors delineated in 18 U.S.C. § 3553(a) as well as any other relevant considerations; and, finally, determine what sentence, whether within, above, or below the guideline sentencing range, appears appropriate.

United States v. Davila-Gonzalez, 595 F.3d 42, 46 (1st Cir. 2010) (quoting United States v. Pelletier, 469 F.3d 194, 203 (1st Cir. 2006)). The statutory factors to be considered include "the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to provide deterrence, respect for the law and just punishment, and the need 'to avoid unwarranted sentence disparities.'" United States v. Zapata, 589 F.3d 475, 486 (1st Cir. 2009).

A.     **The Guideline Sentence**

The sentencing guidelines represent the only "integration of the multiple factors" identified in section 3553 and bear the imprimatur of the expert agency charged with developing them.  United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (emphasis omitted).   Adherence to these guidelines avoids unwarranted disparities.  *See* United States v. Willingham, 497 F.3d 541, 545 (5th Cir. 2007).

The defendant arrives at his advisory guideline range because of the characteristics of his offense.  In order to evaluate a defendant's argument that his treatment under the guidelines is unfairly harsh, a sentencing court must examine how a defendant arrived at a particular sentencing range.  *See* United States v. Shrake, 515 F.3d 743, 747 (7th Cir. 2008).  Here, the defendant's base offense level is increased because of the application of a number of properly applied enhancements.

The PSR has separated the counts of conviction into three groups.  PSR, ¶ 15. Each of the groups has a base offense level of 32.  PSR, ¶¶ 16, 26, 35.  The PSR adds four levels to the base offense level of each group because the material depicts a child under the age of 12, § 2G2.1(b)(1)(A), two levels because the defendant committed a sexual act or sexual contact, § 2G2.1(b)(2)(A), two levels because the defendant distributed the pornography, § 2G2.1(b)(3), and two because each minor was in the custody and care of the defendant, § 2G2.1(b)(5).  The first group carries an additional four-level enhancement because the offense involved the depiction of violence.  PSR ¶ 20.  The combined adjusted offense level for the three groups is 49.  PSR ¶ 47.  Another five levels are added to account for the defendant's pattern of activity involving prohibited sexual conduct and that increases the combined offense level to 54.  PSR ¶ 48.

A three-level reduction would bring the offense level to 51. An offense level of more than 43 is treated as if it were 43 for guideline purposes. PSR ¶ 51.

The advisory guideline sentence in this case is long. That sentence, however, is based on a proper application of the controlling guideline and it reflects the extremely serious nature of the defendant's crime.

**B.     Section 3553(a) Factors**

**1.     The Nature and Seriousness of the Offense**

On July 23, 2014, an agent with the Federal Bureau of Investigation ("FBI") gained access to a website. The primary purpose of that website was the advertisement and distribution of child pornography. The agent viewed numerous image and/or video files on the website that appeared to contain child pornography or child erotica, including images depicting prepubescent females, males, and toddlers, as well as images depicting the anal, vaginal, or oral penetration of prepubescent minors. The agent viewed several postings that were available on the website and had been made by a particular user of the website. The investigation that followed in the next several weeks established that the user was the defendant.

On about July 19, 2014, the defendant made a post on the website that contained images of a prepubescent or early pubescent female ("Minor A"). Several of these images depicted this female lying on her back with her legs spread apart and raised in the air, exposing her vagina and anus. The images focus on the minor's genitals. In the text associated with these images, the defendant provided the first name of Minor A. One of the images posted by the defendant was submitted to the Court with the prosecution version as sealed Exhibit A.

On about July 14, 2014, the defendant made a post on the website that contained small preview images of two prepubescent females ("Minors B and C") and two large images. One of the large images depicts Minor B sitting on a chair or a couch with her legs spread apart and exposing her vagina. The minor's genitals are the clear focus of the image. In the text associated with this image, the defendant provided the first name of Minor B. That image was submitted to the Court with the prosecution version as sealed Exhibit B. A separate large image that the defendant posted to the website depicts Minor C sitting on the same couch with her legs spread apart and exposing her vagina. The minor's genitals are the clear focus of the image. In the text associated with this image, the defendant provided the first name of Minor C. That image has also been submitted to the Court with the prosecution version and is marked as sealed Exhibit C.

The website post that the defendant made on about July 14, 2014, included hyperlinks to external file-sharing websites that contained the full versions of the preview images. The FBI agent who viewed the defendant's July 14 post clicked on the hyperlink and downloaded the full versions of the images. Those images depict Minor B and Minor C. Many of these images show Minor B with her legs spread apart and her vagina exposed and many of the images show Minor C with her legs spread apart and her vagina exposed. For both minors, the genitals are the clear focus of the images.

On August 19, 2014, law enforcement officers identified the residence address for Minor A. When officers arrived at the residence the defendant was on the side porch. The officers asked him whether he knew why they were there. He said that he did and that it was about the girls. The officers told the defendant that that they wanted to talk to him about Minor A and the defendant asked if they also wanted to talk about Minor B

and Minor C.

  Law enforcement officers interviewed the defendant. The defendant told the officers that he had sexually abused Minor A, Minor B, and Minor C. He had used a digital camera and his cell phone's camera to record sexually explicit images of each girl and he had posted those images to a website for others to view and download. The defendant provided the name of the website; it is the website discussed in the paragraphs above. The defendant also provided details of when and where he had produced the images of Minor A, Minor B, and Minor C that he had posted to the website.

  The interview of the defendant and the subsequent investigation established that the defendant had used Minor A to engage in sexually explicit conduct to produce images of that conduct. He had produced those images in 2012, 2013, and 2014. He had posted those images to the website described above in the summer of 2014. The defendant had also used Minor B and Minor C to engage in sexually explicit conduct to produce images of that conduct. He produced those images in July 2014 in Newport, Maine and posted those images in July 2014. Each of the three minors was eight years old or younger when the defendant produced the images. The age of the each of the children is revealed in the presentence report. PSR, ¶ 4.

  Sentencing courts often face the argument in child pornography cases that a defendant has not abused children and is not likely to abuse children. That argument has not always gained traction. As one court has noted as part of a thoughtful discussion of child pornography possession crimes, "[w]hile the defense effort to draw a spectator-vs.-participant distinction does not show that [the defendant's] pornography crime was of less than ordinary severity, it does reemphasize that [the defendant] failed to fully

appreciate that severity." United States v. Goff, 501 F.3d 250, 259 (3rd Cir. 2007). Courts have recognized the harm caused in possessing and distributing images of child pornography. "The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials." Id. The images and the videos of child pornography that a defendant possesses are a permanent record of the harm to those children. "Their injuries and the taking of their innocence are all too real. There is nothing 'casual' or theoretical about the scars they will bear from being abused for [the defendant's] advantage." Id.

The defendant here actually abused three children. That abuse is recorded in the images that the defendant distributed and it is imprinted on the memories of these children. PSR ¶¶ 7-10. He has sent these images around the world and introduced these innocent children to countless depraved persons who have collected, sold, and traded the videos and images. PSR ¶¶ 6, 10. When the defendant posted the images he used the first name and age of each minor. PSR ¶ 10. The molestation itself is horrible. That the defendant was willing to share the images of that terrible violation and crime with every person is chilling.

### 2.     History and Characteristics of the Defendant

The defendant was born in Maine and has lived most of his life here. His parents divorced when he was very young and his mother remarried about four years later and then divorced again. PSR ¶ 60. The defendant describes this second divorce as a crisis situation in his life and has told the PSR author that he was "a whole different person after the divorce." PSR ¶ 61. He struggled with school and did not complete high school. PSR ¶ 70. The defendant has never been married and has no children. PSR ¶ 61.

He has been intermittently employed; his most recent employment ended in May 2014 after he violated company drug policies. PSR ¶ 71.

The defendant says he has never received mental health treatment. PSR ¶ 66. He has molested children for years and acknowledges he is a pedophile. PSR ¶ 6. He would like to receive sex offender therapy. PSR ¶ 67. He has a long history of substance abuse and reports that he has used marijuana, opiates, heroin, cocaine, and methamphetamine. PSR ¶ 68.

The defendant has pleaded guilty and that suggests that he recognizes, in some measure, the immense harm he has caused. There is little else, however, to give hope that the defendant would or could avoid recidivism. To the contrary, he is a pedophile who has demonstrated his willingness to act on his desires. He will always be a danger to all children.

### 3.     Adequate Deterrence to Criminal Conduct

The need to deter individuals from exploiting children and producing child pornography is obvious. For the reasons noted above, these crimes are grave and destructive. An individual who consumes and distributes child pornography creates a market for the abuse of children by providing an economic motive for creating and distributing the materials. *See* United States v. Goff, 501 F.3d at 259-60. A person who produces child pornography feeds that market and directly hurts children.

In support of a sentence of incarceration of thirty years, the defendant cites two child pornography production cases that have been sentenced in Maine in recent years. *Def.'s Memorandum in Aid of Sentencing* at 3. Every child exploitation crime is horrific and unique. Courts make difficult sentencing decisions based on important distinctions

8

like the duration of the conduct, the effect on the victims, and the distribution of the images. *See* United States v. Joubert, 778 F.3d 247, 256 (1st Cir. 2015) (discussing the unique nature of child exploitation crimes). This Court imposed the statutory maximum sentence of 40 years in United States v. Wade R. Hoover, Docket No. 13-CR-00018-B-W and imposed a sentence of 65 years in United States v. Patrick Ian Arsenault, Docket No. 13-CR-00170-B-W. Other courts have imposed lengthy sentences for similar conduct. *See, e.g.*, United States v. Dowell, 771 F.3d 162, 176-77 (4th Cir. 2014) (upholding a sentence of 960 months for abusing two young children, recording that abuse, and distributing the images); United States v. Klug, 670 F.3d 797, 800 (7th Cir. 2012) (holding that a 384-month sentence for producing child pornography depicting "children dressing and undressing" was reasonable); United States v. Sarras, 575 F.3d 1191, 1220-21 (11th Cir. 2009 (upholding a 100-year sentence for producing child pornography).

Deterring the production and distribution of child pornography and protecting children victimized by child exploitation are factors that deserve significant weight at sentencing. The high risk of recidivism for sex offenders is well known. That knowledge has supported sex-offender registration requirements and provides a reasonable basis for the Sentencing Commission's approach to sentencing enhancements in child exploitation cases. *See* United States v. Garner, 490 F.3d 739, 743 (9th Cir. 2007).[1] The risk here supports a lengthy sentence and justifies a long period of supervised release.

---

[1] The assessment of recidivism risks and the difficulty in predicting rates of recidivism from offenders' individual characteristics is discussed by the Seventh Circuit Court of Appeals in United States v. McIlrath, 512 F.3d 421 (7th Cir. 2008).

### III. CONCLUSION

The defendant's sentence should reflect the seriousness of the crime that he committed. Child sex crimes are among the most despicable criminal offenses and the defendant's offense is particularly horrific. The guideline sentencing range in this case is life. The Government anticipates recommending a lengthy sentence that will satisfy the goals of sentencing identified in 18 U.S.C. § 3553 and reflect the seriousness of the defendant's crime and the need to protect the public from the defendant.

Dated at Bangor, Maine this 4th day of May 2016.

> Thomas E. Delahanty II
> United States Attorney
>
> BY: /s/ F. Todd Lowell
>
> F. Todd Lowell
> Assistant United States Attorney
>
> BY: /s/ Andrew McCormack
>
> Andrew McCormack
> Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 4th, 2016, I electronically filed the document(s) with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

JAMES NIXON
James_nixon@fd.org

                THOMAS E. DELAHANTY II
                United States Attorney

                /s/ F. Todd Lowell
                Assistant United States Attorney
                United States Attorney's Office
                202 Harlow Street, Suite 111
                Bangor, ME 04401
                (207) 945-0373
                todd.lowell@usdoj.gov